UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASMINE LEAL-TAYLOR,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>*Defendants*. | Civil Action No. 1:22-cv-01310 (CJN) |

**ORDER**

Jasmine Leal-Taylor, a former elementary school teacher at D.C. Public Schools (DCPS), asserts claims against the District of Columbia for disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) and the D.C. Human Rights Act (DCHRA).[1] ECF No. 16-2 (Compl.). The District moves to dismiss. ECF No. 17 (Mot.). The Court will grant the motion.

**I.    Background**

Leal-Taylor began work at DCPS's Martin Luther King, Jr. Elementary School on August 19, 2019. Compl. ¶ 1. Before her start date, Leal-Taylor had informed DCPS that she suffers from severe chronic asthma. *Id.* ¶ 2. On August 29, 2019, Leal-Taylor suffered an asthma attack at school and required emergency medical care. *Id.* ¶ 3. According to Leal-Taylor, the school

---

[1] Leal-Taylor's complaint also named DCPS and the Office of the State Superintendent of Education as defendants. *See* Compl. at 1. But agencies within the District of Columbia government are not subject to suit unless explicit statutory authority provides otherwise. *Crockett v. Mayor of D.C.*, 279 F. Supp. 3d 100, 113 (D.D.C. 2017). Because Leal-Taylor has not pointed to any such authority, s*ee* ECF No. 20 (Opp.) at 1–2, the Court will treat Leal-Taylor's claims as running against the District only.

1

principal, Angel Hunter, informed her that she would lose her job if she left work to see a doctor. *Id.* ¶ 4A.

Leal-Taylor subsequently requested workplace accommodations for her asthma. *Id.* ¶ 5. On September 10, DCPS responded in writing that it would provide her with four accommodations: (1) an air purifier for her in-school use; (2) inspection of the school building for pests or contaminants; (3) extermination of any pests; and (4) the right to take ten-minute breaks when experiencing exacerbated asthma symptoms. Mot. Ex. 1. Although Leal-Taylor had submitted a doctor's note requesting a work environment that was air-conditioned and elevator-equipped, DCPS's response did not mention those accommodations. *Id.*; Compl. ¶¶ 7–8. It also erroneously stated that the accommodations to which Leal-Taylor was entitled would remain in effect through June 2019, as opposed to June 2020. *See* Mot. Ex. 1; Compl. ¶ 8; *see also* Mot. at 2 & n.1.

A week later, DCPS agreed, subject to Principal Hunter's approval, to transfer Leal-Taylor to a different school that could provide her with air-conditioning and elevator access. Compl. ¶¶ 9, 11. According to Leal-Taylor, she subsequently secured an employment offer and an interview offer at two other DCPS schools equipped with those features. *Id.* ¶¶ 12–13. Leal-Taylor alleges, however, that the offers were rescinded after Principal Hunter spoke with the principals at those schools. *Id.* ¶¶ 14–15.

On September 25, DCPS issued Leal-Taylor a "return to duty" notice, requesting that she return to her post at Martin Luther King, Jr. Elementary. *Id.* ¶ 16. (She had apparently been on leave since her asthma attack in August.) *See* ECF No. 16-3. The same day, Leal-Taylor "emailed DCPS about the status of her accommodations request"—specifically, her request for air-conditioning and elevator access. *Id.* ¶ 17. According to Leal-Taylor, DCPS was "unwilling to

2

discuss the inappropriateness" of the accommodations it had offered in its September 10 letter, and refused her requests to meet. *Id.* ¶ 18–19. Leal-Taylor subsequently filed an EEOC charge, alleging that DCPS failed to provide her with reasonable accommodations. *See* ECF No. 16-3.

On September 30, DCPS terminated Leal-Taylor's employment. Compl. ¶ 21. Leal-Taylor emailed an EEOC employee to inquire whether she should amend her EEOC charge to include her termination, and later met with an EEO counselor to discuss additional claims regarding her termination and alleged retaliatory acts by the District. Compl. ¶¶ 22–23; *see also* ECF No. 16-4; 16-5 at 1. On November 12, Leal-Taylor received an "Exit Letter" from the EEO counselor informing her that, if her "complaint of unlawful discrimination pursuant to the [DCHRA] ha[d] not been resolved to [her] satisfaction," she could file a "formal complaint" with the District's Office of Human Rights within 15 calendar days. ECF No. 16-5 at 2. Leal-Taylor did not do so. Mot. at 4; *see generally* Opp. Leal-Taylor alleges that, on February 14, 2022, EEOC issued her a right-to-sue letter. Compl. ¶ 27.

## II.   Analysis

### A.   Disability Discrimination Claims

#### 1.   Failure to Accommodate Claims

Leal-Taylor first claims that the District discriminated against her in violation of the ADA and DCHRA by failing to either provide elevator and air-conditioning access at Martin Luther King, Jr. Elementary or transfer her to a different school with those features. Compl. ¶¶ 31a–b. To state a failure to accommodate claim, a plaintiff must allege facts showing, among other elements, that her employer refused to make "reasonable accommodation[s]" sufficient for her to "perform the essential functions of [her] position." *Gordon v. D.C.*, 480 F. Supp. 2d 112, 115 (D.D.C. 2007); *see also Grandison v. Wackenhut Servs., Inc.*, 585 F. Supp. 2d 72, 77 n.7 (D.D.C.

3

2008) ("Employment discrimination claims under the [DCHRA] are analyzed using the same legal framework as federal employment discrimination claims."). A plaintiff may be entitled to relief when her employer provides accommodations that are not "effective in meeting [her] needs." *Woodruff v. LaHood*, 777 F. Supp. 2d 33, 43 (D.D.C. 2011). But "[a]n employer is not required to provide an employee [every] accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998).

Leal-Taylor has not alleged that the multiple accommodations the District did provide her—an air purifier, inspection and extermination of the school building, and the right to take ten-minute breaks as needed—were ineffective in meeting her job-related needs. *See generally* Compl. She simply complains that the District did not do more, without alleging why anything more was necessary. *See* Compl. ¶ 31. In her opposition brief, Leal-Taylor argues that the sufficiency of the District's proffered accommodations is a question of fact that a jury must resolve. *See* Opp. at 2. But that misses the point. Even taking Leal-Taylor's allegations as true, as the Court is required to do at this stage, she has pleaded *no* facts from which a jury could conclude that the District's accommodations were inadequate to permit her to perform her job. And her assertions that the District was "[h]ostile" to her because it allegedly failed to correct the dates in its accommodations letter, interfered with her efforts to transfer schools, threatened to terminate her for seeking medical care, and generally refused to negotiate with her have no bearing on whether she has adequately pleaded that the District was required to provide elevator and air-conditioning access as part of a reasonable accommodation.[2] Opp. at 2–4.

---

[2] Leal-Taylor also separately alleges that the District discriminated against her because it did not "engage in reasonable discussions" regarding her request for elevator and air-conditioning accommodations. Compl. ¶ 31e. But "[t]here is no independent cause of action for failure to

2. Termination Claims

Leal-Taylor next claims that the District discriminated against her by both constructively and formally terminating her. Compl. ¶¶ 30f–g. Leal-Taylor's constructive discharge claim fails because she does not allege that she resigned from her job—rather, she was fired. Compl. ¶ 21; *see Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (explaining that the constructive discharge doctrine permits "an employee's reasonable decision to resign because of unendurable working conditions" to be "assimilated to a formal discharge for remedial purposes"). And Leal-Taylor's formal discharge claim fails because she failed to exhaust it (for purposes of the ADA) and because it is time-barred (for purposes of the DCHRA).

"Before bringing suit in federal court, ADA plaintiffs . . . must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). Although "every detail of the eventual complaint need not be presaged in the EEOC filing," the claim's "substance" "must fall within the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (internal quotation marks omitted); *see also* 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.").

Here, Leal-Taylor's EEOC charge was filed five days before her termination and made no mention of it. *See* ECF No. 16-3. Leal-Taylor contends that she later "amended" her EEOC charge

---

engage in the interactive process," "there is only a cause of action for failure to accommodate generally." *Doak v. Johnson*, 19 F. Supp. 3d 259, 278 n.20 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015). For the reasons discussed, Leal-Taylor has not adequately pleaded the elements of that cause of action.

5

to include her termination because she emailed an EEOC employee to "ask[] whether she should renew her EEOC charge" in light of her termination, "discuss[ed]" her termination at an interview with an EEO counselor, and mentioned the termination in her EEOC rebuttal position statement. Compl. ¶¶ 22–25; ECF Nos. 16-4, 16-5, 16-7; Opp. at 5; *see also* 29 C.F.R. § 1601.12(b) ("A charge may be amended to . . . clarify and amplify allegations made therein."). But inquiring whether an amendment is necessary is hardly a "sufficiently precise" statement of intent to amend. *Cf. Gulley v. District of Columbia*, 474 F. Supp. 3d 154, 165–66 & n.5 (D.D.C. 2020) (plaintiff's online "inquiry" to EEOC identifying his termination did not exhaust administrative remedies); *Latson v. Holder*, 82 F. Supp. 3d 377, 381, 387 (D.D.C. 2015) (plaintiff plausibly amended EEO complaint when she "emailed her EEO counselor requesting to amend her EEO Complaint to allege discrimination based also on her 'color and dialect'") (internal ellipses omitted). Nor were Leal-Taylor's other informal communications "substitute[s] for the statutorily required written charge." *Tapp v. Washington Metro. Area Transit Auth.*, 283 F. Supp. 3d 1, 6 (D.D.C. 2017) (plaintiff's conversation with an EEO counselor did not exhaust administrative remedies); *Pierson v. Washington Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 365–67 (D.D.C. 2011) (claims raised in EEOC rebuttal letter were unexhausted).

Leal-Taylor argues that she was unaware she needed to file a separate, formal charge regarding her termination because the EEOC employee she contacted never responded when she asked whether that was necessary. *See* Opp. at 7. Yet, the exit letter Leal-Taylor received from her EEO counselor after her in-person interview specifically directed her that, if she intended to pursue further relief regarding "the above-referenced claims," she needed to file a "formal complaint" within 15 days. ECF No. 16-5 at 2. Far from itself constituting an amendment to her initial charge, *contra* Opp. at 8, the exit letter thus belied any notion that Leal-Taylor's existing

communications with the EEOC had sufficed to append her termination claims to her charge or absolved her of the need to do so. *Cf. Tapp*, 283 F. Supp. 3d at 7 (holding that pro se plaintiff was not excused from exhaustion requirement where EEOC employee erroneously refused to file a charge on his behalf).

As for her DCHRA claims, although they may be brought without exhaustion of administrative remedies, they must be brought "within one year of the unlawful discriminatory act, or the discovery thereof." *Protopapas v. EMCOR Gov't Servs., Inc.*, 251 F. Supp. 3d 249, 256 (D.D.C. 2017) (quoting D.C. Code § 2–1403.16). If a plaintiff does opt to file a charge with the EEOC or the D.C. Office of Human Rights, however, the DCHRA statute of limitations is tolled while the complaint is pending. *Id.* (citing D.C. Code § 2–1403.16). Here, Leal-Taylor's allegedly discriminatory termination occurred on September 30, 2019, but she did not file her initial complaint until May 12, 2022—more than two years later. Compl. ¶ 21; ECF No. 1. And because Leal-Taylor neither included allegations regarding her termination in her EEOC charge nor amended the charge to encompass those allegations, "the charge did not serve to toll the DCHRA statute of limitations as to that claim." *Demissie v. Starbucks Corp. Off. & Headquarters*, 2014 WL 12799163, at *3 n.3 (D.D.C. 2014).

### 3. Remaining Claims

Finally, Leal-Taylor claims that the District discriminated against her by failing to provide her with a correctly-dated accommodations letter and threatening to fire her if she sought emergency care for her asthma attack. Compl. ¶¶ 31c–d. These claims, too, are legally deficient. To make out a disability discrimination claim, a plaintiff must show that she "suffered an adverse employment action"—*i.e.*, a "significant change in employment status" that causes "objectively tangible harm." *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 156, 158 (D.D.C. 2014). As Leal-

7

Taylor herself concedes, *see* Opp. at 4, neither the failure to provide a requested document nor the threat of termination rises to that level. *See, e.g.*, *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 66 (D.D.C. 2019) ("[T]hreats to terminate Plaintiff, alone, do not constitute an adverse employment action.").

### B.    Retaliation Claims

Leal-Taylor asserts that all the allegedly discriminatory practices discussed above also constituted retaliation in violation of the ADA and DCHRA because the District leveraged them to punish her for seeking emergency care for her asthma attack, requesting accommodations, and filing an EEOC charge. Compl. ¶ 33. Like the discrimination claims premised on Leal-Taylor's termination, these retaliation claims are unexhausted under the ADA and untimely under the DCHRA.

Beginning with exhaustion, Leal-Taylor's EEOC charge nowhere attests that any of the District's alleged conduct was performed in retaliation for her protected activities. *See* ECF No. 16-3; *supra* at 5 (discussing ADA administrative exhaustion requirements). Indeed, the charge form's "retaliation" checkbox is not even ticked. *See* ECF No. 16-3. Leal-Taylor points to her assertion in the charge that her principal was "blocking [her] ability to transfer" to a school with elevator and air-conditioning access, arguing that it constituted a "succinct statement of [her] retaliation claim." ECF No. 16-3; Opp. at 10. But that "vague," "circumscribed" allegation sounds in failure to accommodate, not reprisal, and thus does not "fairly embrace" the discrete acts of retaliation that Leal-Taylor alleges in her complaint. *Marshall*, 130 F.3d at 1098; *see also, e.g.*, *Ponce v. Billington*, 652 F. Supp. 2d 71, 74 (D.D.C. 2009) (collecting cases establishing that retaliation claims are not "like or reasonably related to" administrative allegations of discrimination). Nor, for the reasons already discussed, did Leal-Taylor's interview, exit letter, or

rebuttal position statement "amend" her charge to include allegations related to retaliation. *See supra* at 5–7.

As for her DCHRA claims, Leal-Taylor's termination—the last of the retaliatory acts she alleges—occurred on September 30, 2019, and she did not file her first complaint until May 12, 2022. Compl. ¶ 21; ECF No. 1. And (as above) because Leal-Taylor's EEOC charge included only discrimination claims, it did not toll the DCHRA statute of limitations as to retaliation claims. *See Demissie*, 2014 WL 12799163, at *3 n.3.

### III. Conclusion

For the reasons set forth above, it is hereby

**ORDERED** that the District's Motion to Dismiss, ECF No. 17, is **GRANTED**; and it is further

**ORDERED** that Leal-Taylor's failure to accommodate claim is **DISMISSED** for failure to state a claim; and it is further

**ORDERED** that Leal-Taylor's termination and retaliation claims are **DISMISSED** for lack of subject matter jurisdiction; and it is further

**ORDERED** that Leal-Taylor's remaining discrimination claims are also **DISMISSED** for failure to state a claim.

This is a final and appealable order.

The Clerk of Court is directed to terminate this case.

DATE: October 17, 2024

                                             CARL J. NICHOLS
                                             United States District Judge